IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SCALA'S ORIGINAL BEEF<br>& SAUSAGE COMPANY, LLC, | )<br>)<br>) | |
| Plaintiff, | )<br>) | Case No. 09 cv 7353 |
| v. | )<br>) | Judge Robert M. Dow, Jr. |
| MICHAELANGELO ALVAREZ d/b/a<br>MICHAELANGELO FOODS, and<br>MICHAELANGELO FOODS, LLC, | )<br>)<br>)<br>) | Magistrate Judge Maria Valdez |
| Defendants. | )<br>) | |

**MEMORANDUM OPINION AND ORDER**

Currently before the Court is a motion to disqualify Plaintiff's counsel [15] filed by Defendants Michaelangelo Alvarez d/b/a Michaelangelo Foods and Michaelangelo Foods, LLC (collectively, "Defendants"). For the reasons stated below, the motion [15] is respectfully denied.

**I.    Background**

Defendants contend that Plaintiff's attorney, Michael Rachlis, and firm, Rachlis Durham Duff & Adler LLC ("RDDA"), should be disqualified pursuant to the Rules of Professional Conduct that have been adopted by the Northern District of Illinois ("Local Rules") and the pertinent case law governing disqualification of counsel. The basis for Defendants' motion is a 2005 state court action in which Mr. Rachlis and RDDA represented Defendant Alvarez and a construction company operated by Mr. Alvarez in a dispute against Home Depot.

In support of their motion, Defendants invoke Local Rule 83.51.9 (b), which provides that:

> A lawyer shall not knowingly represent a person in the same or a substantially related matter in which the firm with which the lawyer formerly was associated had previously represented a client, (1) whose interests are materially adverse to that person, and (2) about whom the lawyer had acquired information protected by Rule 1.6 and 1.9(c) that is material to the matter; unless the former client consents after disclosure.

Defendants also cite Rules 1.9(a) and 1.7(a) of the Illinois Supreme Court Rules of Professional Conduct. Rule 1.9(a) provides:

> A lawyer who has formerly represented a client in a matter shall not thereafter: (1) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client, unless the former client consents after disclosure; or (2) use information relating to the representation to the disadvantage of the former client, unless: (A) such use is permitted by Rule 1.6; or (B) the information has become generally known.

Rule 1.7(a) states that:

> A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless: (1) the lawyer reasonably believes the representation will not be adversely affected; and (2) the client consents after disclosure.

## II. Analysis

### A. Legal Standards on Motions to Disqualify

In considering motions to disqualify, courts must balance two important considerations: "the sacrosanct privacy of the attorney-client relationship (and the professional integrity implicated by that relationship) and the prerogative of a party to proceed with counsel of its choice." *Schiessle v. Stephens*, 717 F.2d 417, 419-20 (7th Cir. 1983). The Seventh Circuit has "continuously maintained" that, in achieving that balance, it is important to bear in mind that "disqualification is a 'drastic measure which courts should hesitate to impose except when absolutely necessary.'" *Id.* (citation omitted); see also *Freeman v. Chicago Musical Instrument Co.,* 689 F.2d 715, 722 (7th Cir. 1982) (emphasizing that motions for disqualification "should be

viewed with extreme caution for they can be misused as techniques of harassment"). "Accordingly, the burden is on the moving party to show the facts warranting disqualification." *Van Jackson v. Check 'N Go of Illinois, Inc*., 114 F. Supp. 2d 731, 732 (N.D. Ill. 2000).

Consistent with the Local Rules and the Rules of Professional Conduct quoted above, the Seventh Circuit has held that an attorney who undertakes litigation against a former client will be disqualified if a "substantial relationship" exists between the subject matter of the prior representation and the present representation. *LaSalle National Bank v. County of Lake,* 703 F.2d 252, 255 (7th Cir. 1983). In determining whether such a relationship exists, courts in this Circuit employ the following three-step analysis: (1) the trial judge makes a factual reconstruction of the scope of the prior legal representation; (2) the judge determines whether it is reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in those matters; and (3) the judge determines whether that information is relevant to the issues raised in the litigation pending against the former client. *Id.* Generally, matters are "substantially related" where "the lawyer could have obtained confidential information in the first representation that would have been relevant in the second." *Analytica, Inc. v. NPD Research, Inc.,* 708 F.2d 1263, 1266 (7th Cir. 1983).

A finding that a "substantial relationship" exists gives rise to a rebuttable presumption that the attorney received confidential information during his prior representation. *LaSalle National Bank,* 703 F.2d at 256. The Court then must go on to ask whether the presumption of receipt of confidential information has been adequately rebutted. *Id.* "A very strict standard of proof must be applied to the rebuttal of this presumption * * * and any doubts as to the existence of an asserted conflict must be resolved in favor of disqualification." *Id.* at 257.

3

### 1. Factual Reconstruction of Prior Legal Representation

To determine whether a substantial relationship exists between the present litigation and Mr. Rachlis's prior representation of Defendant Alvarez and his construction company in the Home Depot matter, the Court first must undertake a factual reconstruction of the scope of the prior legal representation. In December 2005, Defendant Alvarez and his company, Michaelangelo Construction, filed a lawsuit in Cook County Circuit Court against Home Depot. In that lawsuit, Mr. Alvarez asserted claims against Home Depot for breach of contract, account stated, unjust enrichment, and conversion. The prior lawsuit specifically alleged that Home Depot had failed to pay a $15,000 debt to Mr. Alvarez for construction services that Mr. Alvarez and Michaelangelo Construction claimed to have performed, and that Home Depot had wrongfully disposed of granite countertops from a retail snack shop, Michaelangelo's Café, operated by Mr. Alvarez.

In the earlier litigation, RDDA represented Mr. Alvarez and his construction company. The two attorneys assigned to the case were Mr. Rachlis, a partner, and an associate, Thomas Taylor. The case against Home Depot settled rather quickly in April 2006, when Home Depot agreed to pay Mr. Alvarez $11,500; RDDA received $3,272. According to the firm's records, its lawyers and other professionals devoted 23.9 hours of work to the file, the bulk of which was performed by Mr. Taylor.

### 2. Whether It Is Reasonable to Infer That Confidential Information Was Shared

Defendant Alvarez contends that he "confided in Michael Rachlis and members of his firm confidential information pertaining to his personal finances and his business enterprises," which at that time were Michaelangelo Construction and Michaelangelo's Café. [15, at 3]. In its

4

response in opposition to Defendants' motion, Plaintiff has submitted the declaration of Marion B. Adler, a partner at RDDA and one of Plaintiff's lawyers. Ms. Adler states that she has reviewed all of the firm's files related to the Home Depot litigation, and that there is nothing in RDDA's files concerning confidential communications about Defendant's personal finances or the details of the retail snack shop. The Court's review of the documentation confirms Ms. Adler's assessment.[1]

Nevertheless, even if the firm has not retained any confidential materials from the prior litigation, the Court still must assess whether it is "reasonable to *infer*" that confidential information likely was given to RDDA lawyers during the prior representation. *LaSalle National Bank,* 703 F.2d at 255 (emphasis added). Accordingly, that Mr. Rachlis "cannot recall" whether he learned any confidential information pertaining to Mr. Alvarez's personal finances and business enterprises in connection with the Home Depot matter, and that Mr. Rachlis has "no recollection" of any such information is irrelevant at this stage of the analysis. Similarly, the fact that Ms. Adler did not work on the Home Depot matter is immaterial to the determination of whether the matters are substantially related. See *Analytica, Inc.,* 708 F.2d at 1266 (for purposes of the substantial relationship test, "[i]t is irrelevant whether * * * different people in the firm handled the two matters and scrupulously avoided discussing them"). If the Court finds that an inference that confidential information was shared in the prior litigation is warranted, the confidential information would be imputed to the entire firm. See *Van Jackson v. Check 'N Go of Illinois, Inc*., 114 F. Supp. 2d 731, 733 (N.D. Ill. 2000) ("the knowledge possessed by one

---

[1] The Court notes, however, that one aspect of Ms. Adler's declaration – her statement that she was unaware of the firm's prior representation of Defendant Alvarez until served with the motion to disqualify – is somewhat troubling, as it suggests that the firm may not have conducted a thorough conflicts check prior to agreeing to take on the current litigation against Mr. Alvarez. Even if that is in fact the case, it alone does not provide a basis for disqualification.

attorney in a firm is presumed to be shared with the other attorneys at that firm"). And the presumption that the confidential information was shared with all of the firm's attorneys is particularly appropriate in this case given that RDDA consists of only five practicing attorneys.

Here, the Court cannot infer that Defendant Alvarez shared confidential information pertaining to his personal finances during the previous litigation. In the Home Depot matter, Mr. Alvarez sought to collect a debt from Home Depot. It is not apparent to the Court – nor have Defendants explained – how Mr. Alvarez's personal finances would have been implicated in that action, and, by extension, why he would have shared such information with RDDA. And with respect to confidential information regarding Defendant Alvarez's business enterprises, even if RDDA had received confidential information regarding Michaelangelo Construction and Michaelangelo's Café, neither of those businesses is involved in the current litigation. The business enterprise that is at issue in the present case – Michaelangelo Foods – was not in existence at the time of the previous action and has not been shown to have any relationship to the Café (see below). Therefore, Defendant could not have shared any confidential information about Michaelangelo Foods with RDDA.

### 3. Whether the Confidential Information Is Relevant to the Present Litigation

In any event, even assuming that Defendant Alvarez did share confidential information relating to his personal finances with RDDA at the time of the former representation, that information would not be relevant to the present litigation, which is quite remote – both in time and subject matter – from the earlier litigation against Home Depot. The Home Depot matter settled in April 2006, more than three and a half years before the current litigation was filed. Furthermore, the two matters concerned unrelated subjects. The present suit involves contract

6

and trademark disputes related to Michaelangelo Foods, a business owned by Mr. Alvarez that is engaged in the wholesale distribution of giardiniera and similar vegetable products. The prior lawsuit involved two Alvarez-related entities – Michaelangelo Construction and Michaelangelo's Café – that are have nothing to do with the current suit. Indeed, even if one were to accept that the previous representation had a tangential relationship to the food service industry in that some allegations pertained to Michaelangelo Café, a retail snack shop operated by Mr. Alvarez, the actual dispute had nothing at all to do with food, but instead involved the alleged conversion of granite countertops.

**III. Conclusion**

Recognizing that the public will "not repose confidences in lawyers whom they distrust and will not trust firms that switch sides * * * nimbly" (*Analytica, Inc.*, 708 F.2d at 1269), our court of appeals enunciated a three-part test in *LaSalle National Bank*, 703 F.2d at 1255, to safeguard the sacrosanct privacy of the attorney-client privilege. Applying that test, courts in this Circuit have not hesitated to prohibit "lawyers who violate ethical requirements from further participating in the legal proceedings to which the violation pertains," because doing so "is one way to renew the public's faith in the integrity of the legal profession and in the fairness of the judicial proceedings." *Andrew Corp. v. Beverly Mfg. Co.*, 415 F. Supp. 2d 919, 926 (N.D. Ill. 2006). However, in this case, Defendants have not carried their burden of showing facts required for disqualification under the *LaSalle National Bank* test. In particular, as explained above, because RDDA's present representation adverse to Defendant Alvarez and his current companies is not substantially related to the firm's prior representation of Defendant Alvarez and other Alvarez-related companies that have no relationship to this litigation, the drastic measure of

disqualification is not warranted. Accordingly, Defendant's motion to disqualify [15] is respectfully denied.

Dated:  December 10, 2009          _____
                                                  Robert M. Dow, Jr.
                                                  United States District Judge